# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1735 | **DATE** | 2/7/2003 |
| **CASE TITLE** | Century 21 Real Estate Corp. v. CLTM Assoc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, Plaintiff's motion for summary judgment [15-1] is DENIED in its entirety.

(11) ■ [For further detail see attached memorandum opinion and order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTURY 21 REAL ESTATE CORPORATION, | ) ) ) |
| Plaintiff, | ) No. 02 C 1735 ) ) HONORABLE DAVID H. COAR |
| v. | ) ) |
| CLTM ASSOCIATES, LTD., CHRISTOPHER G. LaPAK, and TERRY A. MAX, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Century 21 Real Estate Corporation brings a three-count diversity action against Defendants CLTM Associates, Ltd., Christopher G. LaPak, and Terry A. Max to recover monies allegedly owed by defendants pursuant to a real estate franchise agreement. Century 21 moves for summary judgment in its favor on all counts in the Amended Complaint and on the Defendants' counterclaim. For the following reasons, Century 21's motion is DENIED in its entirety.

DOCKETED
FEB 1 0 2003

### I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Kamler v. H/N Telecom. Servs., Inc., 305 F.3d 672, 677 (7th Cir. 2002). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable

1

inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fritcher v. Health Care Servs. Corp., 301 F.3d 811, 815 (7th Cir. 2002).

The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324. A scintilla of evidence in support of the non-movant's position is insufficient, and the non-movant "must do more than simply show that there is some metaphysical doubt as to the material fact." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 250. Weighing evidence, determining credibility, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. Anderson, 477 U.S. at 255.

## II. Background

The following facts are taken from the parties Local Rule 56.1 materials. Defendant Century 21 Real Estate Corporation ("Plaintiff" or "Century 21") is a corporation under Delaware law with its principal place of business in Parsippany, New Jersey. CLTM Associates, Ltd. ("CLTM") was, at all relevant times, an Illinois corporation with its principal place of business in Northbrook, Illinois ("Northbrook"). Christopher G. LaPak ("LaPak") and Terry Max ("Max") are individuals who reside in Northbrook.

### The Franchise Agreement

At the urging and with the approval of Tony Porterfield, Century 21's Regional Director,

2

on October 1996, CLTM purchased a Century 21 franchise in Northbrook, which was about to close. This Northbrook franchise was the sole Century 21 franchise in the North Shore suburbs of Chicago. At that time, Century 21 did not request or require a personal guarantee either from LaPak or Max, and neither LaPak nor Max agreed to personally guarantee any aspect of CLTM's performance as a franchisee. Beginning in October 1996, CLTM operated the Century 21 franchise in Northbrook under the Century 21 trademark and CLTM paid franchise fees.

On December 9, 1997, CLTM executed a Franchise Agreement for the operation of the Century 21 real estate brokerage office in Northbrook. Also on December 9, 1997, LaPak and Max guaranteed payment of all sums due under the Franchise Agreement when it signed the "Guaranty of Payment and Performance."[1] The Franchise Agreement provided that the real estate brokerage office would be located at 1220 Meadow Road in Northbrook. The location of the real estate office was later changed pursuant to an Addendum to the Franchise Agreement executed by CLTM and Century 21, effective July 6, 1999. The location was thus changed to 1336 Shermer Road in Northbrook.

The Franchise Agreement provided that the franchise term would be for a period of 10 years, commencing October 17, 1996, through and including October 16, 2006. (¶2). Century 21 granted CLTM the right to use the Century 21 trademarks and Century 21 System for the promotion and assistance of independently owned and operated real estate brokerage offices.

---

[1] Defendants contend that the Franchise Agreement merely recited the same terms and conditions under which CLTM had been operating since October 1996, and that neither LaPak nor Max received additional consideration for guaranteeing payment. Century 21 disputes these fact, citing paragraph 21(A) of the Franchise Agreement, which is an integration provision that states this agreement supersedes and cancels any previous agreement between the parties. This paragraph, however, does not establish that LaPak and Max received additional consideration.

(¶6A). In addition, Century 21 agreed to provide a supply manual suggesting sources of office materials, make available sample referral forms for use in referring business, operate a sales training program for Century 21 franchises, pay for certain of CLTM's costs for attendance at an orientation and management program, and contribute to the National Advertising Fund, provided that the franchisee met certain royalty payment requirements. (¶¶ 6B-6F).

According to the Franchise Agreement, CLTM was required to pay service fees in the amount of six percent (6%) of the gross revenue earned, derived or received by CLTM from all real estate related transactions set forth in paragraph 8A of the Franchise Agreement ("royalty fees"). Royalty fees more than ten (10) days late bear interest from the due date until paid at the lower rate of either the highest rate allowed by law or a rate that is five percent (5%) per annum higher than the prime rate then currently established by Mellon Bank, N.A., Pittsburgh, PA. (¶8B). CLTM agreed to pay, in addition to the Service Fees, a monthly contribution to the National Advertising Fund ("NAF") equal to two percent (2%) of the gross revenue earned as specified in the Franchise Agreement. (¶9A). Century 21 could assess a late fee equal to ten percent (10%) and/or accrue interest as specified in the Franchise Agreement for any NAF contribution not timely received. (¶9B). The Franchise Agreement provided that Century 21 could terminate the Agreement for various reasons including, but not limited to, CLTM's (a) breach of its representations or warranties; or (b) failure to perform any of its obligations under the Franchise Agreement or under any other agreement or indebtedness with Century 21 including, but not limited to, the failure to pay sums due and owing. (¶17). CLTM agreed that, upon termination of the Franchise Agreement, CLTM would pay all sums then due and owing, as well as royalty fees plus NAF contributions based upon the gross revenue received from any

transaction in process as of the date of termination; any referral sent to or received from any other Century 21 office prior to the date of termination; or any transaction occurring after termination, the listing of which was procured by CLTM during the time it was operating under the Franchise Agreement. (¶¶18A, 18B). CLTM also agreed that, in the event there was an early termination of the Franchise Agreement, CLTM would immediately become obligated to pay Century 21 "lost future profits." (¶19A). Lost future profits, as defined in that paragraph, consist of all amounts that CLTM would have paid to Century 21 as royalty fees and as NAF contributions from the date of early termination through the Expiration Date of the Franchise Agreement, had there been no early termination. Lost future profits are calculated in accordance with a formula set forth in that paragraph.

As to record keeping, CLTM agreed that it would maintain its books and records for three years after termination and that it would cooperate with Century 21 and permit Century 21 to conduct a final inspection and audit of CLTM's records after the Franchise Agreement expired or was terminated. (¶11). Pursuant to Paragraph 20 of the Franchise Agreement, the parties agreed that, in the event a legal action was instituted to enforce the terms and conditions of the Franchise Agreement, "the prevailing party shall be entitled to recover all litigation costs, including attorneys' fees."

### Termination of the Franchise Agreement

By letter dated January 31, 2001, Century 21 advised CLTM that it had not cooperated with Century 21 in scheduling an audit and that pursuant to Paragraph 11C(iv) of the Franchise Agreement, it must allow Century 21 access to CLTM's books and records. The letter further requested a series of documents to be produced at the audit, including tax returns, bank account

records, transaction records, cash receipt logs, detailed closing information and cash disbursement records. By letter dated February 20, 2001, Century 21 provided notice to CLTM that it had fallen well below the minimum operating standards required of a Century 21 franchisee pursuant to Paragraph 17F of the Franchise Agreement. Specifically, Century 21 noted that the office revenues reported for the year 2000 were only $26,070.75 while the average revenue generated by franchisees in the local area was $466,469.55 during the same time period. The letter warned that if production did not increase for the first six months of 2001, the Century 21 franchise may be terminated.

By letter dated March 21, 2001, Century 21 provided notice to CLTM that its account with Century 21 was seriously past due and CLTM was in default of its monetary obligations under the Franchise Agreement. By letter dated April 20, 2001, Century 21 provided notice to CLTM that it remained in default under the Franchise Agreement for its non-payment of royalty fees and NAF contributions due and owing to Century 21, despite numerous notices from Century 21. In addition, Century 21 advised CLTM that it was in default under Paragraph 8A(i) of the Franchise Agreement for its failure to fully report and pay Century 21 on closed transactions since February 2000. Century 21 specifically reminded CLTM that the Franchise Agreement was subject to termination unless CLTM fully cured the defaults by May 22, 2001.

In March and April of 2001, James Brown ("Brown"), a Century 21 auditor, performed an audit of the CLTM franchise at the CLTM offices in Northbrook. Brown's audit determined that CLTM had failed to report royalty fees and NAF contributions on real estate transactions as required under the Franchise Agreement. Working with Century 21's books and records and the Century 21 site in Northbrook, Brown discovered that CLTM had failed to report and pay royalty

fees for 334 real estate transactions dating back from January 1998 through and including March 30, 2001. Brown calculated that CLTM had failed to report $128,462.19 in royalty fees, as well as $42,820.71 in national advertising fund fees. Brown determined that CLTM owed Century 21 a total of $190,143.85, which included interest assessed on the unreported and unpaid royalty fees.[2] Brown further determined that not all the books and records that were requested had been supplied by CLTM and that further amounts might be due based on the missing documentation.

Using the formula provided in paragraph 19A of the Franchise Agreement, Plaintiff calculated that Defendants owed an additional $171,172.57 for lost future profits. This amount was computed by taking the average royalty fee and national marketing fees owed by CLTM during the time period during which it reported to Century 21 for real estate transactions as required by the Franchise Agreement. That amount was multiplied by the remaining number of months of the Franchise Agreement after it was terminated but before the expiration of the franchise term or 63 months. An 8% discount was then applied to that figure to arrive at the present value of $171,172.57 for lost future profits.

By letter dated May 16, 2001, Century 21 advised CLTM that it was required to pay immediately all amounts that it had failed to report and pay to Century 21, as uncovered by the audit. Century 21 noted that the audit was limited because CLTM had failed to provide adequate financial records, as requested by Century 21 and required by the Franchise Agreement. Despite

---

[2] The total amount of damages relating to royalty fees, audit charges, and NAF contributions is $190,443.85. That figure is comprised of the audit cost of $300.00 and the audit finding that $190,143.85 is due. Defendants dispute the amount due. They assert Brown overstates the amount of fees due and owing because he included transactions that were not closed in his determination. Defendants state that, for them to owe approximately $190,000, they would have had to generate $120,000,000 in sales during the period January 5, 1998 through March 30, 2001, which they did not. Century 21 disputes Defendants' calculation.

notice from Century 21, CLTM failed to make the required payments as Century 21 requested. On July 19, 2001, Century 21 sent CLTM a notice of termination, effective July 20, 2001. Century 21's termination notice set forth CLTM' s defaults and noted that CLTM owed $212,955.76 in royalty fees and NAF contributions to Century 21, and demanded payment in that amount by no later than August 2, 2001. In addition, Century 21 reserved its rights to conduct a post-termination audit of CLTM's records.

On September 17, 2001, CLTM sent LaPak and Max a letter that informed them that they were delinquent in paying the past due amounts owed under the Franchise Agreement and would face litigation in the event that they did not repay all such sums immediately. By letter dated November 16, 2001, through its litigation counsel, Century 21 sent correspondence to LaPak and Max advising them that pursuant to the personal guaranty that they had executed, they were liable for all sums owed by CLTM and demanded payment immediately of same. To date, Century 21 has received no payments from any of the defendants.

At approximately the same time that Century 21 terminated CLTM as a Century 21 franchise, CLTM sold the Northbrook building which housed the franchise. Sometime after the sale, CLTM destroyed all its documentation, including documents that would have allowed Century 21 to complete its audit to determine the total amount of closed transactions that were unreported and for which royalty fees and NAF fees had not been paid.

## Century 21's Actions as Franchisor

Defendants contend that Century 21 failed to provide CLTM the services outlined in paragraph 6 of the Agreement. Namely, Defendants state that, for approximately two years, CLTM's franchise was not recognized in the Century 21 system; it was not listed in the system directories or on the system website. Defendants state that, since referrals accounted for 20-25% of CLTM's business, Century 21's failure adversely effected CLTM's ability to earn commissions and contributed to the franchise's demise. According to Defendants, Century 21 failed to maintain an adequate support staff. When Century 21 staff changes were made, including the replacement of regional director Tony Porterfield, these changes were not communicated to Defendants, and the new director also did not communicate with Defendants. Century 21 disputes these facts, asserting that it fulfilled each of its obligations under the Franchise Agreement.

After CLTM's purchase of the Northbrook franchise, Cendant Corporation, which owned the Century 21 franchise system, acquired the Coldwell-Banker real estate brokerage system. Defendants contend that, after this acquisition, Century 21 devoted less resources to Century 21 on the North Shore and instead supported the Coldwell-Banker system. Century 21 disputes this fact.

## III. Discussion

Count I of Century 21's Complaint seeks damages from CLTM resulting from CLTM's breaches of the Franchise Agreement, including CLTM's failure to pay monthly royalty fees and contributions to the National Advertising Fund. Plaintiff also seeks lost future profits against CLTM in Count I. In Count II, Century 21 seeks relief from LaPak and Max individually for

9

breach of their guaranty agreement, as they have failed to make each payment and/or perform each obligation required of CLTM as they agreed in the Guaranty of Payment and Performance. CLTM counterclaims against Century 21 for breach of contract.

Defendants do not dispute that a valid contract existed between the parties. Indeed, Defendants concede that, on December 9, 1997, CLTM executed the Franchise Agreement for the operation of the Northbrook Century 21 real estate brokerage office that CLTM had been operating since October 17, 1996. Rather, Defendants argue that they did not breach the contract; they argue that Century 21 materially breached its contractual obligations and therefore the Franchise Agreement is unenforceable. Defendants further argue that defendants LaPak and Max are not individually liable because, as there was no consideration for the Guaranty of Payment and Performance they executed, it is unenforceable as a matter of law. The Court addresses each Count in turn.

## A. Count I - Breach of Contract

Under New Jersey law,[3] for Century 21 to succeed on its breach of contract claim against Defendants, it must prove: (1) the existence of a valid and binding contractual relationship with Defendants; (2) that Century 21 complied with and performed its obligations under the contract; (3) that Defendants breached the contract; and (4) that Century 21 sustained damages as a result

---

[3] Though the parties rely on both Illinois and New Jersey law, the Franchise Agreement between Century 21 and Defendants specified that New Jersey law would govern disputes arising under the Agreement. In diversity cases, district courts follow the choice of law rules of the courts of the state in which they sit. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); 7th Cir. Case. In Illinois courts, "the law applicable to a contract is that which the parties intended . . . . When that intent is expressed, it should be followed." H.B. Fuller Co. v. Kinetic Sys., Inc., 932 F.2d 681, 685 (7th Cir. 1991) citing Hofeld v. Nationwide Life Ins. Co., 322 N.E.2d 454, 454 (Ill. 1975). As Illinois courts would respect the parties' choice of New Jersey law, so does this Court.

of that breach. Nat'l Utility Servs. Inc. v. Chesapeake Corp., 45 F. Supp. 2d 438, 448 (D.N.J. 1999) (applying New Jersey law); AT&T Credit Corp. v. Zurich Data Corp., 37 F.Supp.2d 367, 370 (D.N.J. 1999) (same). Neither party disputes that the Franchise Agreement signed on December 9, 1997 is a valid, binding contract. The parties also do not dispute that Defendants stopped making royalty payments to Century 21. Thus, at issue in this case is whether Century 21 complied with and performed its obligations under the contract.

Century 21's Performance

Defendants argue that summary judgment should not be granted in favor of Century 21 because a genuine issue of material fact exists as to whether Century 21 fulfilled all of its obligations under the Franchise Agreement. Namely, Defendants assert that Century 21 failed to fulfill its obligations under paragraph 6 of the Franchise Agreement. Century 21 did not include CLTM in the directory of Century 21 offices or on the Century 21 website for almost two years, and it also failed to provide a proper support staff. Defendants assert that, by not being listed, CLTM was denied referrals, which normally amount to about 20-25% of CLTM's business. Defendants further assert that, by not having the support of or being able to communicate with Century 21's staff, and by Century 21 supporting the Coldwell-Banker real estate brokerage system after Cendant Corporation acquired it, Century 21 violated the Franchise Agreement and caused CLTM to lose business.

This Court finds that Century 21 has not stated sufficient facts that warrant summary judgment in its favor on Count I. Namely, it has not proved that it complied with and performed its obligations under the contract. While Plaintiff summarily concludes it "substantially performed" its contractual duties, Century 21 has not asserted facts to establish that as a matter of

11

law. It is unclear at what point Century 21 ceased contact with CLTM, whether and for how long the franchise was excluded from the website and/or directory, and what impact those actions had on Defendants' business. These facts are important not only to determine whether Plaintiff fulfilled its obligations under the contract, but also in determining damages. Further, Defendants' allegation that Century 21 supported the Coldwell-Banker system rather than CLTM is similarly important in determining damages, particularly any future lost profit calculation. The Court therefore DENIES Plaintiff's motion for summary judgment as to Count I.

B. Count II - Breach of the Guaranty of Payment and Performance

Defendants argue that LaPak and Max are not individually liable for any sum due under the Franchise Agreement because, as there was no consideration for the Guaranty of Payment and Performance they executed, it is unenforceable as a matter of law. Plaintiff counters that, because the guaranty was executed contemporaneously with the Franchise Agreement, there was sufficient consideration.

If a guaranty lacks consideration, it is merely an unenforceable gratuitous promise. Great Falls Bank v. Pardo, 622 A.2d 1353, 1359 (N.J. Sup. Ch. 1993). Thus, if LaPak and Max did not execute the Guaranty of Payment and Performance at the same time as the Franchise Agreement and as part of the same agreement, then the guaranty "must be supported by separate consideration moving to the guarantor or the renunciation of something substantial by the guarantee." Id. at 1359 (citations omitted).

In this case, it is clear that the parties signed the Franchise Agreement and the Guaranty at the same time on December 9, 1997. What is not clear from the parties' statements of facts, however, is whether the Franchise Agreement signed on December 9 was merely a formality (on

12

the date of execution, the Defendants had been operating the franchise for 14 months) or whether it differed in any respect that would amount to sufficient consideration for the Guaranty. See Ross v. Realty Abstract Co., 141 A.2d 319, 322 (N.J. Sup. A.D. 1958) ("Either a slight benefit to the promisor or a trifling inconvenience to the promisee is good consideration when bargained for."). The parties concede that, at the time CLTM began operating as a Century 21 franchise in October 1996, personal guarantees were not a condition of the franchise. Thus, Plaintiff's argument that the Franchise Agreement "supercede[s] and cancel[s]" all "prior and contemporaneous agreements"[4] does not, on its own, establish that the parties' relationship and/or dealings changed in any way that would provide sufficient consideration for the Guaranty. As Plaintiff has not established there was consideration for LaPak and Max to execute the Guaranty, this Court DENIES Century 21's motion for summary judgment on Count II.

## C. CLTM'S COUNTERCLAIM

Plaintiff also moves for summary judgment on CLTM's breach-of-contract counterclaim against it. Because this Court finds that a genuine issue of material fact exists as to whether Century 21 "fully performed its contractual obligations during the lifetime of the Franchise Agreement," summary judgment on the counterclaim is DENIED.

---

[4] Indeed, this Court notes that a cursory review of the language of the provision in the Franchise Agreement that Plaintiff cites could be read to invalidate the Guaranty if it was a "contemporaneous agreement."

13

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED in its entirety.

Enter:

*David H. Coar* (signature)

David H. Coar
United States District Judge

Dated: February 7, 2003